**In the Interest of D.W.S. and M.L.L., children.**
Nos. 32-95-B, and 30-943-B.
Juvenile and Domestic Relations Court, Palm Beach County.
December 6, 1971.

164

LEWIS KAPNER, Judge.

This cause was presented upon the court's motion to reconsider its earlier rulings.

On November 8, 1971, and November 17, 1971, respectively, this court committed the above named juveniles to the Division of Youth Services "with a recommendation for halfway house placement." Shortly thereafter the Division notified this court that vacancies in such programs were not available but the boys would be placed in a halfway house should a vacancy occur. The intent of the commitment order was to place the boys in a training school if a halfway house was unavailable and the juveniles were transported to the state training school on December 2nd and December 3rd respectively.

The following day, Saturday, December 4, 1971, the Palm Beach Post-Times reported the opening of a DYS halfway house in West Palm Beach. (Copy of article is attached.) This court was not notified of the immediate availability of this facility and learned of it only through the newspapers. One of the juveniles in question and his family specifically expressed a desire for placement in this facility in preference to any other program. Despite the availability of this halfway house and the court's recommendation for placement therein, the boys were received in the training school.

This facility has recently been established in West Palm Beach amidst much publicity and controversy. Many of the surrounding neighbors protested its establishment and Representative Donald Hazelton of Palm Beach County, along with representatives of the Division of Youth Services, called a meeting of these neighbors in an attempt to allay their concerns. These residents were informed that this home was a community-based program in keeping with new and successful rehabilitative methods. It was described as a

good thing for Palm Beach County since local boys who might otherwise go to a state institution would have an opportunity to be rehabilitated in their own community and in a non-institutional atmosphere.

This court has long supported the concept of community-based halfway houses as an alternative method of rehabilitating juvenile offenders. Many youths have weak family controls and they yield to negative pressures of their peers. Often their behavior becomes so uncontrollable as to necessitate removal from their home and placement in an institution far from their community. They may adjust well in the institution but when they return they frequently fall into their previous delinquent patterns. Adjustment in an insolated institution is not necessarily adjustment for community and family environment.

Halfway houses began so that a juvenile could deal with his problems within his own community in a non-institutional facility with utilization of positive peer pressures. The essence of such a program is its community-based character. "Community-based" does not mean simply a facility which is in a community. It means a facility within the juvenile's *own* community so that he can adjust to those forces which will be present after his period of supervision is over. It does *not* mean taking a child from Palm Beach County and placing him in another county. It means keeping him in Palm Beach County so that when he is adjudged rehabilitated and capable of returning home, he will not have to transfer school in the middle of the year, quit a good job, give up his friends, or make the many other difficult adjustments attendant to leaving one community and returning home.

Many boys in halfway houses have serious tensions and conflicts within their families. Sometimes these conflicts are so severe that it is in the best interests of all concerned that the child be removed to another community. Such actions are fraught with the danger that family relationships will be permanently severed and removal from the community should be the exception and not the rule. The existence of family conflict does not necessarily mean the absence of love and concern. There is frequently much hope for amelioration of the family situation and every effort should be made to palliate the conflicts. Community halfway houses can help but they can help only if they are available for local youth.

In the instant case we have a locally based halfway house operated by the State Division of Youth Services and described as beneficial to the youth of Palm Beach County. Yet, the very week it opens two local youths are shipped off to a state institution despite specific court recommendations to the contrary.

166

Accordingly it is thereupon ordered that the orders of commitment above described are hereby rescinded and modified and that the above named juveniles shall be committed to the Division of Youth Services at the halfway house in West Palm Beach for an indeterminate period until they are legally discharged therefrom, or until further order of this court, provided such commitment shall not extend beyond their twenty-first birthdays, and that they be returned to the said halfway house without unnecessary delay.